Hamilton, J.
The statement of the case, the claims under the petition, the position assumed by the Distilling Company in its answer, and the claims of the City of Cincinnati in its petition, are correctly and fully set forth in the agreed statement of facts, which is incorporated in the bill of exceptions as follows:
“agreed statement of facts.
“In the petition plaintiff claimed from the defendant $1,361.33 for the use of part of the canal system of the State of Ohio by the defendant for carrying goods and merchandise in Canal Boats from October 1, 1912, to August 31, 1917, at the rate of 15 cents per mile, so traveled by the Canal boats as used by the defendant.
“The defendant filed an answer admitting the amount claimed and stating that without collusion with it, the City of Cincinnati claimed said sum and had notified said defendant not to pay the same. The City’s claim arose under a lease of said Canal from the State of Ohio under certain Acts of the Legislature. The defendant, The Clifton Springs Distilling Company, was permitted to pay the above sum of money into Court under its claim of interpleader. Whereupon the City of Cincinnati was made a party defendant and filed its answer. The State of Ohio then filed a reply. The question for decision is which of these two is entitled to the above fund now in the hands of the Clerk of this Court. The agreed facts are as follows:
*228 “The City of Cincinnati is a municipal corporation under the laws of Ohio. The statement of the petition as to the sum of $1,361.33 being due from the original defendant as above set out, is also admitted. The Clifton Springs Distilling Company’s place of business is situated on the Canal on Ludlow Avenue and the B. & O. S. W, Railway Co. The Governor of the State of Ohio executed and delivered to the City of Cincinnati on August 29, 1912, and on January 6, 1917, the leases attached to the answer of the defendant, The City of Cincinnati. The City of Cincinnati paid all installments of rental under said leases up to April 1, 1918, the last semi-annual payment of the City being made in advance on October 11, 1918.
“The City of Cincinnati never entered upon, improved or occupied as a public street or boulevard, or for sewerage, conduit or for any other purpose, or purposes, all or any part of the Miami and Erie Canal described in the leases to the defendant, or in any Acts of the General Assembly under which said leases were made. No plans and specifications were ever drawn or approved by the State Engineer for a convenient outlet for the discharge of the water of the said Miami and Erie Canal at a point 300 feet north of Mitchell Avenue, or at any other point so as not to obstruct the flow of water through the remaining part of the Canal, or so as not to destroy or injure the present supply of water for mechanical or commercial purposes. No bond in any amount has been prescribed by the State Board of Public Works or approved by the Attorney General of Ohio for the faithful performance of said work or given by the City of Cincia *229 nati for such performance. The City of Cincinnati has never constructed or caused to be constructed suitable and sufficient works for a convenient outlet for the discharge of the water of said Miami and Erie Canal at any point so as not to obstruct the flow of water through the remaining part of said Canal and so as not to destroy or injure the supply of water as it existed at the date of the passage of the several legislative Acts of 1911, for mechanical or commercial purposes. Said City has never adopted or constructed, either under said Acts or at all, appropriate works, or any works, for the purpose of supplying water to the lessee users of said water of the Miami and Erie Canal along that portion of said canal to be abandoned in order to enable and for the purpose of enabling the State of Ohio fully, or in any other way to carry out and discharge the obligations resting upon it by virtue of certain contracts subsisting at the passage of the Act of 1911, to and in force between the State of Ohio and said lessee water users during, the remainder of the terms of said contracts in the same quantity and under the same conditions and at the same rate of rental provided for in said contracts.
“The State of Ohio for many years prior to 'May 15, 1911, and continuously ever since, has been in possession of all that portion of the Miami Canal described in all the foregoing Acts, and of the property described in the .leases attached to the answer of the defendant, The City of Cincinnati, using said Canal as a navigable stream, flowing the waters through said portion of the Canal for navigation and public purposes and that such por *230 don of said canal, and particularly that portion thereof for navigation of which tolls were charged to the original defendant herein and for which this action was brought, always have been and were during the period for which said tolls were charged used for navigation and for public purposes by the State of Ohio and the people of the State during all the time aforesaid. In this behalf and regard said plaintiff, The State of Ohio, during all the time aforesaid, maintained all of said property, including the banks and bed of the canal, as well as all other parts thereof, and exercised care and supervision over all said property during all the time aforesaid and which it still continues to do, through its State officers, servants, agents and employes, at all times at expense and outlay to the plaintiff, The State of Ohio, expending for the purposes aforesaid since July, 1917, the sum of not less than $3,464.25.”
It will be seen that the claim of the city of Cincinnati is based largely upon the construction of the lease executed and delivered to it by the governor of the state of Ohio on the 29th day of August, 1912, which lease dated from the first day of October, 1912, for the term of 99 years, renewable forever, and was executed under the authority of an act of the general assembly of Ohio, found in 102 Ohio Laws, 168-171, entitled “An Act to provide for leasing a part of the Miami and Erie canal to the city of Cincinnati as a public street or boulevard, and for sewerage and subway purposes.”
The plaintiff in error, city of Cincinnati, bases its strongest argument for its rights in the matter *231 upon the terms of the lease, urging that a fair interpretation of the lease gives it the right to the rentals for the use of that section of the canal leased to it. We are of opinion that the rights of the parties must be determined from the act itself, authorizing the lease, and that no rights accrue under the terms of the lease which are not duly authorized by the act.
In the case of Roseberry v. Hollister, 4 Ohio St., 297, the court say at page 308:
“The state can only act by its agents, duly authorized by law; and where such agents, being mere ministerial officers, transcend their authority, their acts are void, or at least voidable by the state.”
Again in the case of State, ex rel., v. The Cincinnati Central Ry. Co., 37 Ohio St., 157, the court say at page 178:
“It is for the legislature, and not its subordinate agents, * * * to authorize such additional public use and to confer such authority.”
Without determining whether or not the lease contains any power or authority not contemplated by the act, it is clear that if it does it would be but a transcending of authority on the part of the state’s agents, and would be without effect in so far as it exceeded the authority granted by the act. The act, under which the lease was made, is as follows;
“An Act
“To provide for leasing a part of the Miami and Erie canal to the city of Cincinnati as a public street or boulevard, and for sewerage and subway purposes.

*232
“Be it enacted by the General Assembly of the State of Ohio:

“Section 1. Permission shall be given to the city of Cincinnati, in the manner hereinafter provided, to enter upon, improve and occupy forever, •as a public street or boulevard, and for sewerage, conduit and if desired for subway purposes, all of that part of the Miami and Erie canal which extends from a point three hundred feet north of 'Mitchell avenue to the east side of Broadway in •said city, including the width thereof, as owned or held by the state, but such permission shall be granted subject to all outstanding rights or claims, if any, with which it may conflict, and upon the further terms and conditions of this act.
“Section 2. Such permission shall be granted upon the further condition that said city, in the uses aforesaid of all or any portion herein mentioned of such canal, shall construct or cause to be constructed suitable and sufficient works for a convenient outlet for the discharge of the water of said canal, at a point three hundred feet north of Mitchell avenue, so as not to obstruct the flow of water through the remaining part of such canal, nor destroy nor injure the present supply of water for mechanical or commercial purposes. Such outlet shall be constructed in accordance with plans and specifications to be drawn or approved by the state engineer, and the city of Cincinnati shall give bond in such sum as shall be prescribed by the state board of public works, to be approved by the attorney general for the faithful performance of the work.
*233 “And such permission shall be granted upon the further condition that said city shall adopt and construct appropriate works for the purpose of supplying water to the lessee users of said water along that portion of the canal to be abandoned, in order to and for the purpose of enabling the state fully to carry out and discharge the obligations now resting upon it by virtue of certain contracts now subsisting and in force between it and said lessee water users, during the remainder of the terms of said contracts, in the same quantity and under the same conditions and at the same rate of rental provided for in said contracts, and provided further that during the period of construction of a street or subway or of appropriate works for the purpose of supplying water to the lessee users of said water, as herein provided, said city of Cincinnati shall cause no cessation or diminution of the supply of water to the said lessee water users to which they are entitled under their respective contracts or leases with the state of Ohio, except in so far as such cessation or diminution of such supply of water may be absolutely necessary.
“Section 3. Upon the passage of this act the governor shall appoint three (3) arbitrators, none of whom shall be residents of Hamilton county, who shall, whenever the council of said city decided that such canal be used for all the purposes mentioned in section one (1) hereof, proceed to act as provided in section four (4) of this act.
“Section 4. The arbitrators thus selected shall constitute a board of arbitration whose duty it shall be, without reasonable delay, to ascertain and fix the actual value of the property of the state *234 specified in section one hereof. The annual rental to be paid by the city of 'Cincinnati to the state for the use of such property shall be a sum equal to four (4) per cent, of such valuation so ascertained and fixed. Such board of arbitrators shall report the valuation as above provided for in writing to ■the governor and the council of such city respectively. And such board of arbitration shall have authority to hear the testimony of witnesses as to the fair value of such canal so to be taken by said city, to employ such assistants as it may deem necessary, and to fix their compensation, and to incur the expenses incident to its work. Each arbitrator shall receive for his services not exceeding twenty-five dollars a day for the period of time actually employed in the work of acting as arbitrator on such board; and all such expenses and such compensation shall be paid by said city, one-half of the amount so paid to be a credit upon the first installment of rent payable under the lease that may be entered into pursuant to this act. In case of any vacancy occurring in such board from any cause, such vacancy shall be filled in the same manner in which the appointment so becoming vacant was made. Provided that all rentals accruing to the state under this act shall be paid into the •state treasury to the credit of the general revenue fund.
“Section 5. Upon approval by resolution of the council of said city of the amount of such valuation as fixed by such board of arbitration or a majority of them, and upon the governor being satisfied that the interests of the state are fully protected and that the valuation placed upon .such *235 property is adequate, which fact shall be endorsed upon such lease by the governor, he shall execute and deliver to the city of Cincinnati a lease for ninety-nine years, renewable forever, which lease shall not be assignable, of such canal so to be taken by the said city of Cincinnati for the uses and purposes before mentioned, and upon the terms and conditions specified in this act; and such lease shall contain covenants on the part of said city for payment of said rental to the state in equal semiannual payments during such term of such lease, and for compliance with this act, and on the part of the state for quiet enjoyment by said city of Cincinnati of the demised premises, and the attorney general shall prepare such lease, and such lease shall contain the further provision that if said city of Cincinnati fails, neglects or refuses to perform all or any of the terms and conditions of said lease or fails, neglects or refuses to comply with each and every of the terms and provisions of this act, the said lease shall become null and void and said city and the users and occupiers of said property shall forfeit all rights in said lease and in the property located upon the land therein described and such other covenants and provisions as, in the judgment of the attorney general, will protect the interests of the state.
“In case the state of Ohio shall at any time build a canal of not less than nine-foot gauge from Lake Erie to the Ohio river at Cincinnati, the city of Cincinnati sháll reimburse the state for tbe amount of its expenditure in procuring right of way either by purchase or condemnation, or both, for said canal, from a point three hundred feet north of *236 Mitchell avenue, through the Mill Creek valley, to the Ohio river.
“Section 6. The surface of such street or boulevard when completed shall not be occupied or used for the purpose of any street, steam, electric, elevated or other kind of railroad whatsoever, nor shall any rights by way of appropriation be exercised or permitted as against such property; but nothing herein shall prevent the construction by said city or its grantee, of a subway beneath such 'street or boulevard, for use of a street, electric, suburban or interurban railway; provided, however, that the right to construct such subway or to use the same when constructed for any street, electric, suburban or interurban railway thereunder, shall never be granted or permitted to any person, persons or corporation other than said city, except on terms that shall provide for competitive bidding for the right to construct or use the same as aforesaid and on terms that shall secure to street, electric, suburban, interurban or underground electric railways the right to use the subway, all tracks, appliances, services and electric current in and incident thereto, on equal and proportionate terms, said terms to be determined on the basis of the total cost of operation and a reasonable return on the investment; provided further, that any street, electric, suburban or interurban railway using such subway shall permit the use of its tracks by any other electric, suburban or interurban railway for a reasonable compensation for such distance as is necessary to secure entrance to such subway, and provided further that should a gauge other than standard gauge be established for the tracks of *237 said subway, a standard gauge shall likewise be provided for the tracks therein and for such tracks as are necessary to secure entrance thereto.
“Any grant or franchise made to any person, firm or corporation to construct or operate a subway under the property mentioned in section one hereof, shall be subject to all the provisions of sections 9147, 9148 and 9149 of the general code relating to underground railroads.
“Section 7. All laws and parts of laws inconsistent herewith are hereby repealed.
“Section 8. If any section or portion of this act shall for any reason be declared to be unconstitutional, such invalidity shall not affect any other section or portion hereof.”
Section 1 of the act provides that permission shall be given to the city of Cincinnati in the manner hereinafter provided to enter upon, improve and occupy forever, as a public street or boulevard, and for sewerage, conduit, and, if so desired, for subway purposes, that section of the canal described in the act and in the lease itself. Section 1 further provides that such permission shall be granted subject to all outstanding rights or claims, if any, with which it may conflict, and upon the further terms and conditions of the act.
A careful reading of the act shows clearly that some of its provisions look to the rights and interests of the state, such as the saving of the revenues, and the flow of the water from above the section leased through the sewers or outlet to be provided for by the city. None of these reservations or conditions contemplates the future use by the state of that part of the canal leased for the *238 purpose of navigation — but do contemplate regulation for the purpose of giving a free flow from above and furnishing a supply to the users along the canal. This grant and the construction by the city of the improvement authorised would render it impossible to use the section of the canal leased for the purpose of navigation, and would be an abandonment for such purpose by the state of its incidental powers to sell the surplus water, or for navigation purposes, unless expressly saved by the reservations and conditions of the act.
Section 2 of the act provides:
“Section 2. Such permission shall be granted upon the further condition that said city, in the uses aforesaid of all or any portion herein mentioned of such canal, shall construct or cause to be constructed suitable and sufficient works for a convenient outlet for the discharge of the water of said canal, at a point three hundred feet north of Mitchell avenue, so as not to obstruct the flow of water through the remaining part of such canal, nor destroy nor injure the present supply of water for mechanical or commercial purposes. Such outlet shall be constructed in accordance with plans and specifications to be drawn or approved by the state engineer, and the city of Cincinnati shall give bond in such sum as shall be prescribed by the state board of public works, to be approved by the attorney general for the faithful performance of the work.
“And such permission shall be granted upon the further condition that said city shall adopt and construct appropriate works for the purpose of supplying water to the lessee users of said water *239 along that portion of the canal to be abandoned, in order to and for the purpose of enabling the state fully to carry out and discharge the obligations now resting upon it by virtue of certain contracts now subsisting and in force between it and said lessee water users, during the remainder of the terms of said contracts, in the same quantity and under the same conditions and at the same rate of rental provided for in said contracts, and provided further that during the period of construction of a street or subway or of appropriate works for the purpose of supplying water to the lessee users of said water, as herein provided, said city of Cincinnati shall cause no cessation or diminution of the supply of water to the said lessee water users to which they are entitled under their respective contracts or leases with the state of Ohio except insofar as such cessation or diminution of such supply of water may be absolutely necessary.”
The only right granted to the city under the act and the lease executed by the governor pursuant thereto was an easement, the 'fee title to the lands remaining in the state, subject only to the use by the city for the purposes named in the act. The grant was a right to occupy and improve as a public street or boulevard, and for sewerage, conduit and subway purposes, the section of the canal described, the fee remaining in the state. No other state’s right or interest was granted or intended to be granted than that just recited.
In the case of State, ex rel., v. The P., C., C. & St. L. Ry. Co., 53 Ohio St., 189, the fourth proposition of the syllabus is as follows:
*240 “By the act of March 24, 1863, 60 Ohio Laws, [44], and the conveyance afterwards executed by the governor pursuant thereto, the only right granted to the city of Cincinnati was to enter upon, improve and occupy the land described therein forever as a public highway and for sewerage purposes, the title to the lands remaining in the state subjected only to such use.”
It is true that in the case of The Little Miami Elevator Co. v. City of Cincinnati, 30 Ohio St., 629, the court held that the permission granted to the city to enter upon, improve and occupy forever as a public highway and for sewerage purposes was an abandonment of that part of the canal as a canal, and that such improvement and new use of it by the city rendered impossible any future use of .it as a canal, and that if any future use was reserved such reservation would be inconsistent with the grant. It will be noted that the proposition there was that the improvement and new use were inconsistent with the grant, and the fifth proposition of the syllabus of that case holds:
“This grant and the construction by the city of an avenue and sewer along the line of the land, upon a plan of improvement, approved by the 'board of public works, in such manner that the canal could no longer be used for purposes of navigation, was an abandonment of it by the state for the public uses for which it was held.”
The grant alone does not constitute an abandonment of the section of the canal granted. There must be the construction by the city of the improvements contemplated by the act, and, until said improvements are constructed, there is noth *241 ing inconsistent with the use by the state of the section granted for the purposes of navigation or the furnishing of a water supply. Further,, we are of opinion that the construction of a suitable outlet, as provided by the act, and the giving of a bond, as therein provided, constitute conditions precedent to the taking possession of the section of the canal leased, to the exclusion of the state from the uses to which it was entitled as a public highway.
In the case of State of Ohio v. George, Trustee, et al., 34 Ohio St., 657, the court say in the first paragraph of the syllabus:
“The execution and delivery of the bond required by the act of April 6, 1876 (73 Ohio L. 275), and the supplementary act of April 24, 1877 (74 Ohio L. 466), are conditions precedent to the right to exercise the powers which said act were designed to confer.”
That was a grant to the city of Hamilton to fill up the canal basin, and the act required the execution of a bond, and the court held, as above stated, that the execution and delivery of the bond was a ■condition precedent to the right to exercise the powers conferred. In that case the act did not in terms provide that the deposit of the bond with the governor should precede the exercise by the city of the authority to fill up the basin. The court ■held that the deposit of the bond as a condition precedent was intended by the act.
In the instant case the act provides that such permission should be granted upon certain conditions, to-wit: the construction of the outlet for the discharge of the water from above, approval *242 by the state engineer of the plans and specifications therefor, the execution of a bond, and, further, upon conditions as to the protection of the supply of water to lessees. The agreed statement of facts shows none of these conditions to have been performed by the city. It is claimed by the city of Cincinnati that it has paid full rental value during the period covered by the lease, and that this alone gives it the right claimed. The answer to that is that the city possessed the right to proceed at once, upon the taking effect of the lease, to do the things provided in the act and to perform the conditions required. It may be stated further that the rentals had been paid in the case of State v. George, Trustee, supra; but the court did not consider that in passing upon the case.
The authorities are uniform that both the execution of the grant and the construction of the improvement by the city must take place before the abandonment is complete. We therefore hold that the city acquired no right to rentals for navigation, having failed to perform the conditions precedent required under Section 2 of the act; that the use by the state as a highway for navigation purposes, until the improvement is made by the city, is not inconsistent with the grant; and that the state of Ohio is entitled to the money in question.

Judgment affirmed.

Shohl, P. J., and Cushing, J., concur.